UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT FRANCIS,                    )
                                   )
            Petitioner,            )
                                   )
      vs.                          )        Case No. 4:08CV1048 CDP
                                   )
UNITED STATES OF AMERICA,          )
                                   )
            Respondent.            )

## MEMORANDUM AND ORDER

Robert Francis seeks to vacate, set aside or correct his sentence under 28

U.S.C. § 2255. Following a jury trial, Francis was convicted for conspiring to

distribute and possess with intent to distribute more than five kilograms of

cocaine. Criminal Case No. 4:00CR547 CDP. Francis appealed, and the Eighth

Circuit Court of Appeals affirmed his conviction and sentence. United States v.

Francis, 367 F.3d 805 (8th Cir. 2004).[1] Francis petitioned the United States

Supreme Court for certiorari, which was granted. Francis v. United States, 543

U.S. 1098 (2005). The Supreme Court vacated the Eighth Circuit's opinion and

remanded to the appellate court for reconsideration in light of its opinion in United

States v. Booker, 543 U.S. 220 (2005). On remand from the Supreme Court, the

_____

[1]The overwhelming evidence of Francis' guilt is set out in detail in the Eighth Circuit's
opinion and will not be restated here unless necessary to resolve an issue before me.

Eighth Circuit remanded the case to me for resentencing and reinstated its earlier opinion "except as may be inconsistent with the remand for resentencing under the advisory guideline system as outlined in United States v. Booker." United States v. Francis, 141 Fed. Appx. 501, 503 (8th Cir. 2005). On remand, I treated the guidelines as advisory and again sentenced Francis to life imprisonment based on an advisory "range" of life. Francis appealed, and the Eighth Circuit affirmed. United States v. Francis, 203 Fed. Appx. 751 (8th Cir. 2006).

Francis then filed the instant § 2255 motion, raising the following nine grounds for relief:

1) The Court's use of the Allen charge violated Francis' fifth and sixth amendment rights;

2) The government failed to disclose material exculpatory evidence and knowingly presented false testimony;

3) Lay opinion testimony was improperly admitted and violated Francis' due process rights;

4) The Court improperly denied severance because Willie Ellis' defense was irreconcilable and antagonistic to Francis' defense;

5) The admission of statements by co-defendant Malarie Macon violated Francis' due process right to a fair trial;

6) The Court, and not the jury, unconstitutionally found facts at sentencing to increase Francis' sentence;

7) The Court unconstitutionally exposed him to a higher punishment

by finding facts at sentencing based on a preponderance of the evidence;

8) The Court violated Francis' due process rights by using "guesswork" and adopting the Presentence Report's drug quantity estimates; and

9) Francis' due process rights were violated when the prosecutor refused to dismiss the indictment, which Francis claims was based on perjured testimony.

For the reasons that follow, I conclude that the records before me conclusively demonstrate that Francis has no right to relief. After careful consideration of all the evidence, I will deny Francis' motion without an evidentiary hearing for the reasons that follow.

## Background

On December 7, 2000, Francis and twelve others were charged in a one-count indictment with conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846 and § 841(a)(1). Francis and six of his co-defendants were tried jointly in a trial that began on May 1, 2002. The case was submitted to the jury on May 21, 2002. On May 24, 2002, the jury returned guilty verdicts against Francis and his co-defendant Leo Muhammad and not guilty verdicts on three others,[2] but continued

---

[2] Jimmy Francis, Willie Ellis, and Tommy Macon.

to deliberate as to co-defendants Anthony Francis and Germaine Davis. On May 28, 2002, the jury found Germaine Davis guilty, but I declared a mistrial as to co-defendant Anthony Francis after the jury was unable to reach a verdict.[3]

## Discussion

A.    *No Evidentiary Hearing is Required*

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks and citation omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Id. (internal quotation marks and citation omitted). Here, when I consider the file as a whole I find that Francis' claims are inadequate on their face and conclusively refuted by the record. The motion is denied for the reasons that follow.

B.    *Grounds Previously Decided Adversely to Francis on*
      *Appeal Cannot be Relitigated Here*

"It is well settled that claims which were raised and decided on direct appeal

---

[3] Anthony Francis was retried and found guilty on August 29, 2002.

cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." Bear

Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003) (internal quotation

marks and citation omitted); see also, Thompson v. United States, 7 F.3d 1377,

1379 (8th Cir. 1993) (citing United States v. Holtzen, 718 F.2d 876, 878 (8th Cir.

1983)). Here, Grounds 6 through 8 of Francis' § 2255 motion were rejected by the

Eighth Circuit on direct appeal and cannot be relitigated here.

Grounds 6, 7, and 8 are related and challenge my finding of facts relative to

sentencing. In Ground 6, Francis argues that his fifth amendment rights were

violated when I, not the jury, found facts (specifically, the quantity of drugs

attributable to him) at sentencing. Similarly, in Ground 7, Francis argues that he

was unconstitutionally exposed to a higher punishment when I found facts at

sentencing by a preponderance of the evidence, rather than beyond a reasonable

doubt. Finally, in Ground 8 Francis alleges that his fifth amendment rights were

violated when I used "guesswork" to determine the drug quantity for which he was

responsible.

On appeal, the Eighth Circuit rejected the arguments made in Ground 6 of

Francis' motion as follows:

> At sentencing, the district court set Robert Francis' offense level at 38
> under U.S.S.G. § 2D1.1(a)(3), the base level for an offense involving
> over 150 kilograms of cocaine. Robert Francis contends that his

sentence violated <u>Apprendi</u>, because the indictment did not allege, and the jury was not instructed that it must find, that the offense involved in excess of 150 kilograms of cocaine. This Court has specifically rejected the assertion that the jury must make a guideline quantity finding, holding that: <u>Apprendi</u> only applies if the defendant is sentenced above the statutory maximum. It is for the district court to determine the type and amount of drugs involved when determining the applicable sentencing range under the guidelines, so long as the sentence imposed does not exceed that applicable to the offense found by the jury. <u>United States v. Miller</u>, 295 F.3d 824, 827 (8th Cir. 2002) (internal citations omitted).

At the conclusion of the trial, the district court instructed the jury that in order to find the defendants guilty, it must find that their offenses involved more than five kilograms of cocaine. Defendants' sentences were within the statutory maximum for the offense alleged in the indictment and found by the jury. Therefore, we find that defendants' <u>Apprendi</u> challenge is without merit.

<u>Francis</u>, 367 F.3d at 820-21. The Eighth Circuit also rejected the arguments raised

in Grounds 7 and 8 of this motion as follows:

As we have previously held, the remedial portion of [<u>United States v. Booker</u>, 543 U.S. 220 (2005)] permits reliance on facts found by the sentencing court under a preponderance of the evidence standard so long as those facts are used to sentence under an advisory rather than a mandatory Guidelines range. <u>United States v. Johnson</u>, 450 F.3d 831, 833 (8th Cir. 2006). We previously affirmed the district court's sentencing-related factual findings, and the district court properly interpreted the scope of our remand order. On remand, the district court was aware of the advisory nature of the Guidelines and sentenced the defendants under this advisory regime, thus correcting the Sixth Amendment, <u>Booker</u> error.

<u>Francis</u>, 203 Fed. Appx. 751, 753 (8th Cir. 2006). My "sentencing-related factual

findings" were affirmed in the Eighth Circuit's prior opinion as follows:

> We next consider whether the district court erred in assessing the quantity of drugs attributable to each defendant. In jointly-undertaken criminal activity, a defendant is accountable for his own conduct as well as conduct taken by others that was in furtherance of the activity and reasonably foreseeable. U.S.S.G. § 1B1.3(a)(1)(B). This applies to drug quantities implicated in a conspiracy. United States v. Frazier, 280 F.3d 835, 852 (8th Cir. 2002). In determining drug quantity accountability, a district court may rely solely on the testimony of cooperating witnesses. United States v. Sarabia-Martinez, 276 F.3d 447, 450 (8th Cir. 2002). Drug quantity must be established by a preponderance of the evidence, and we will reverse only if the district court clearly erred. United States v. Jimenez-Villasenor, 270 F.3d 554, 561 (8th Cir. 2001).

> Robert Francis challenges his drug quantity assessment of more than 150 kilograms. Postal Inspector Dennis Simpson testified that 240 packages were mailed from St. Louis, Missouri to California in 1999. Approximately twenty of those packages were opened pursuant to search warrants and over $100,000 documented. The government presented evidence of fingerprint analysis, physical surveillance, and camera surveillance linking Robert Francis to these packages. Using an average of $6,000 per package, the government extrapolated that Robert Francis mailed approximately $1,428,000 in narcotics proceeds to California in 1999. Based on the wiretap evidence and the testimony of Detective Rick Koenemann and Agent Kenneth Williams, it was estimated that Francis was purchasing a kilogram of cocaine for approximately $15,000. Thus, by extrapolation, the government projected that Robert Francis was responsible for ninety-five kilograms in 1999.

> The coconspirators' testimony supported the government's position that the conspiracy averaged two drug trips per month at eight kilograms per load. However, even assuming the organization averaged only one trip per month from January 2000 through September 2000, it is accountable for more than 70 kilograms in the

year 2000.  Coupling this estimate with the ninety-five kilograms attributable to the year 1999, the conspiracy involved more than 150 kilograms.

The district court considered the evidence mentioned above and made detailed findings with respect to the drug quantities for which it held Robert Francis responsible.  We cannot say that the district court clearly erred in reaching its calculation.

Robert Francis also attacks his sentence by claiming that the drug quantities assessed to him were not part of one conspiracy, but were rather part of multiple conspiracies.  The issue of whether the evidence presented at trial proves single or multiple conspiracies is a question for the jury.  United States v. Adipietro, 983 F.2d 1468, 1475 (8th Cir. 1993).  The jury was instructed on single versus multiple conspiracies and found Robert Francis involved in the single conspiracy involved. We find that the jury's finding is supported by the record.

Francis, 367 F.3d at 821 and n.8 (internal footnotes omitted).

In an effort to circumvent the Eighth Circuit's rulings, Francis contends that he should be allowed to pursue these claims in his § 2255 motion because he now claims a violation of the Fifth Amendment, not the Sixth Amendment as argued before the appellate court.  Even if Francis could raise his Fifth Amendment arguments in this proceeding, they have been squarely rejected by the Eighth Circuit.  In United States v. Cruz-Zuniga, 571 F.3d 721, 726 (8th Cir. 2009), the appellate court rejected a defendant's argument that "the district court's finding the drug quantity by a preponderance of the evidence violates his Fifth and Sixth Amendment rights" as follows:

- 8 -

We review de novo constitutional challenges, United States v. Bates, 77 F.3d 1101, 1104 (8th Cir. 1996), and the district court's interpretation and application of the advisory Guidelines, United States v. Whiting, 522 F.3d 845, 849 (8th Cir. 2008). After United States v. Booker, 543 U.S. 220 (2005), 'judicial factfinding is permissible at sentencing so long as the district court understands that the sentencing guidelines are advisory only.' United States v. Brave Thunder, 445 F.3d 1062, 1065 (8th Cir. 2006). Under an advisory sentencing regime, 'the district court is entitled to determine sentences based upon judge-found facts and uncharged conduct' where the defendant is 'not sentenced in excess of the statutory maximum.' United States v. Garcia-Gonon, 433 F.3d 587, 593 (8th Cir. 2006) (citing United States v. Red Elk, 426 F.3d 948, 951 (8th Cir. 2005)); see also United States v. Okai, 454 F.3d 848, 851 (8th Cir. 2006) (explaining, 'after Booker, facts underlying sentencing enhancements that are not used to increase the defendant's sentence above the congressionally authorized maximum need not be alleged in the indictment to pass constitutional muster' (citations omitted)). '[S]entencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence.' Garcia-Gonon, 433 F.3d at 593 (citing United States v. Pirani, 406 F.3d 543, 551 n. 4 (8th Cir. 2005) (en banc)). The district court understood the Guidelines were advisory and did not sentence [the defendant] above the statutory maximum. We conclude the district court did not err by engaging in judicial factfinding and applying a preponderance of the evidence standard to determine the drug quantity attributable to [the defendant].

Id. at 626-27. See also United States v. Valdivia-Perez, 185 Fed. Appx. 543, 545

n.3 (8th Cir. 2006) ("Because defendant does not have the right to a jury trial under

the Sixth Amendment in this context, he also does not enjoy the alleged due

process right to proof beyond a reasonable doubt under the Fifth Amendment.").

Whether couched as Fifth or Sixth Amendment violations, Francis' constitutional

rights were not violated when I determined drug quantity at sentencing by a preponderance of the evidence.  Ground 6, 7, and 8 fail.

      C.      *Arguments That Could Have Been Raised on Direct Appeal But Were Not Are Precluded From Review in This § 2255 Proceeding Absent A Sufficient Showing To Avoid the Procedural Bar*

"A collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).  "[N]ormally a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." Poor Thunder v. United States, 810 F.2d 817, 823 (8th Cir. 1987) (internal citation omitted).  Grounds 1 through 5 and 9 were not raised on direct appeal.  If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion unless the movant can show both (1) a "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which he complains.  See Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993); Mathews v. United States, 114 F.3d 112, 113 (8th Cir. 1997).[4]

Here, Francis alleges, and the government does not dispute, that he could not

---

[4]A movant can also avoid procedural default by demonstrating actual innocence.  Johnson v. United States, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, a § 2255 movant must show either cause and actual prejudice, or that he is actually innocent.") (internal quotation marks and citations omitted).  Actual innocence is a strict standard that generally cannot be met "where the evidence is sufficient to support a conviction on the charged offense." Id. (internal quotation marks and citation omitted).

have raised Ground 2 on direct appeal because it is based on "newly discovered evidence." Therefore this claim, while meritless for the reasons discussed below, is not precluded from review. As for the remaining claims, Francis argues that ineffective assistance of counsel precluded him from raising Grounds 1, 3 through 5, and 9 on direct appeal.[5] The "cause and prejudice" that must be shown to consider a procedurally defaulted claim may include ineffective assistance of counsel. See Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005). "Actual prejudice" requires a showing that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Johnson v. United States, 278 F.3d 839, 844 (8th Cir. 2002) (internal quotation marks and citation omitted).

The Sixth Amendment establishes the right of the criminally accused to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To state a claim for ineffective assistance of counsel, Francis must prove two elements of the claim. First, he "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth

---

[5]Francis does not raise ineffective assistance of counsel directly as a ground for relief in his § 2255 motion.

Amendment." Id. at 687. In considering whether this showing has been accomplished, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. The courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id. Second, Francis "must show that the deficient performance prejudiced the defense." Id. at 687. This requires him to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The court need not address both components if the movant makes an insufficient showing on one of the prongs. Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995). As a matter of law, counsel cannot be ineffective for failing to make a meritless argument. Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994).

Francis cannot avoid the procedural default of Grounds 1, 3 through 5, and 9 because his attorney was not ineffective for failing to raise these meritless arguments on appeal. Even if Francis' allegations of ineffective assistance of counsel were sufficient to constitute cause and prejudice to excuse his otherwise procedurally defaulted claims, Francis cannot prevail on the merits of his claims for the reasons that follow.

D. *Ground 1 Fails Because the Use of the Allen Charge Did Not Violate Francis' Constitutional Rights*

In Ground 1 of his motion, Francis contends that the Court's use of the <u>Allen</u> charge during jury deliberations violated his Fifth Amendment right to a fair trial and his Sixth Amendment right to an impartial jury. The jury began its deliberations on May 21, 2002. On May 22, 2002, at 10:05 a.m. I received a note from the jury requesting exhibits and testimony. The note also stated that one juror was not willing to deliberate and requested that one of the alternate jurors be permitted to deliberate instead. After discussing the note with counsel for all parties, I informed them that I intended to read the first two paragraphs of the <u>Allen</u> Charge as set out in the Eighth Circuit Model Jury Instructions. No counsel objected, so I then read the following to the jury:

> Now, additionally, one of the notes I got indicated that some of you are having difficulty discussing the case and deliberating with one another. And what I wanted to tell you is that's normal for jury deliberations. We have got twelve people here. We don't expect you to agree on everything. We want you to discuss the case with one another, and see if you can reach agreement. And what I told you before, and I'm going to tell you this again, it is your duty to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment. Of course, you must not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of other jurors, or for the mere purpose of returning a verdict. Each of you must decide the case for yourself. But you should do so only after consideration of the evidence with your fellow jurors. In the

- 13 -

course of your deliberations, you should not hesitate to re-examine your own views, and to change your opinion if you are convinced that it is wrong. To bring twelve minds to a unanimous result, you must examine the questions submitted to you openly and frankly, with proper regard for the opinions of others. And with a willingness to re-examine your own views, if the deliberations convince you that you should.[6]

Now, there was a reference to the alternate jurors. They are here in case one of you has a family emergency, or gets sick, or, you know, something happens. I don't want that to happen to any of you. I'm glad you are all still here. And I hope we don't have to use those alternates. But we can't just say, "Well, somebody doesn't agree, we'll put in the alternate." You all need to talk to each other and do your best to decide this case. And it's up to you. And you should be guided by the instructions and the evidence we've given you.

The jury then resumed its deliberations until May 24, 2002 at 9:30 a.m. when I received another note from the jury, again stating that one juror would not deliberate. After discussion with all counsel, I gave the following instruction to the jury:

As I stated in my earlier instructions, it is your duty to consult with one another and to deliberate with a view to reaching agreement if you can do so without violence to your individual judgment. Of course, you must not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinions of other jurors, or for the mere purpose of returning a verdict. Each of you must decide the case for yourselves, but you should do so only after consideration of the evidence with your fellow jurors. In the course of your deliberations, you should not hesitate to reexamine your own views

---

[6]This instruction is the first two paragraphs of the Allen Charge in Eighth Circuit Manual of Model Jury Instructions Criminal Supplemental Instruction 10.02.

and to change your opinion if you are convinced it is wrong. To bring 12 minds to unanimous result, you must examine the questions submitted to you openly and frankly with proper regard for the opinions of others and with a willingness to reexamine your own views. Remember that if in your individual judgment the evidence fails to establish guilt beyond a reasonable doubt, then the defendant should have your vote for a not guilty verdict. If all of you reach the same conclusion, then the verdict of the jury must be not guilty. Of course, the opposite also applies. If in your individual judgment the evidence establishes guilt beyond a reasonable doubt, then your vote should be for a verdict of guilty, and if all of you reach that conclusion, the verdict of the jury must be guilty. As I instructed you earlier, the burden is upon the Government to prove beyond a reasonable doubt every essential element of the crime charged. Finally, remember that you are not partisans, you are judges, judges of the facts. Your sole interest is to seek the truth from the evidence. You are the judges of the credibility of the witnesses and the weight of the evidence. You may conduct your deliberations as you choose, but I suggest your carefully reconsider all the evidence bearing upon the questions before you. You may take all the time you feel is necessary. There is no reason to think that another trial could be tried in a better way, or that a more conscientious, impartial, or competent jury could be selected to hear it. Any future jury must be selected in the same manner and from the same source as you were. If you should fail to agree on a verdict as to any defendant, the case is left open as to that defendant and must be disposed of at some later time. You may, however, reach verdicts on some defendants and not on others. Please go back now and finish your deliberations in a manner consistent with your good judgment as reasonable persons.

At 4:45 p.m. on May 24, 2002, the jury returned verdicts as to five defendants, including a verdict of guilty as to Francis. At the jury's request, they resumed their deliberations as to the remaining two defendants (Germaine Davis and Anthony Francis) on the next court day, May 28, 2002. Around 11:30 a.m., the jury reached

a verdict as to Davis, but was unable to reach a verdict as to Anthony Francis.

"An Allen charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." United States v. Ybarra, 580 F.3d 735, 738 (8th Cir. 2009) (internal quotation marks and citation omitted). "Supplemental jury instructions are permissible, so long as they are not coercive." Id. To determine whether a particular Allen charge had an unduly coercive effect, the Court must consider (1) the content of the instruction, (2) the length of deliberation after the Allen charge, (3) the total length of deliberations, and (4) any indicia in the record of coercion or pressure on the jury. United States v. Walrath, 324 F.3d 966, 969 (8th Cir. 2003); United States v. Thomas, 946 F.2d 73, 76 (8th Cir. 1991).

The content of the Eighth Circuit's model Allen charge, which I read to the jury, is not coercive. Ybarra, 580 F.3d at 735; see also United States v. Aldridge, 413 F.3d 829, 832-33 (8th Cir. 2005) (noting that the model charge "has been accepted by this court as non-coercive in content"); United States v. Hagan, 412 F.3d 887, 890 (8th Cir. 2005) ("Model Instruction 10.02 is approved by this court as to content."). Nor was the use of the instruction coercive under the circumstances of this case. Here, the trial lasted from May 1, 2002 to May 21, 2002. I read the supplemental instruction to the jury the first time on May 22, 2002, the day after jury deliberations began. After hearing the instruction, the jury

deliberated until the morning of May 24, 2002, when I read the <u>Allen</u> charge. The jury then continued to deliberate throughout the day, returning verdicts on Francis and four others at 4:45 p.m. The jury then requested to come back the next court day to continue its deliberations as to the remaining defendants. Finally, on the fifth day of deliberations, the jury reached a verdict as to one of the remaining defendants. Although the jury indicated that it had reached unanimous verdicts on two defendants, it did not disclose the nature of its verdicts, the identity of the defendants, or the number of guilty or not guilty votes for any of the defendants. The total length of deliberations (five days), the extended period of time the jury continued to deliberate after the reading of the charge, and the fact that the jury acquitted some defendants and could not reach a verdict as to another demonstrate that the reading of the <u>Allen</u> charge did not unduly coerce the jury into returning a verdict. Ground 1 of Francis' § 2255 motion fails.

      E.    *Ground 2 Fails Because There is no Brady Violation*

     In Ground 2 of his motion, Francis argues that the government failed to disclose material, exculpatory evidence to the defense in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Francis also contends that the government presented false testimony of Timothy Hargrove to the jury. The evidence at issue is a memorandum of an interview between the prosecutor, the postal inspector, and

Harold Watkins, an alleged coconspirator.  The memorandum was written by the

postal inspector and describes an interview with Harold Watkins.  After relating

Watkins' statement about a trip he and Hargrove made to California to obtain

cocaine from someone named Mark Walker, the memo describes Watkins'

relationship with Leo Muhammad.  It then states: "Watkins stated he has never

conducted any drug transactions with the Francis brothers.  Watkins stated that

sometimes while he and Muhammad were smoking dope together, Muhammad

would mention that he had some 'home boys - Pete and Tony' in town."  Watkins'

statement was not made under oath.  The Eighth Circuit summarized Timothy

Hargrove's testimony as follows:

> Timothy Hargrove testified that he flew with alleged coconspirator
> Harold Watkins to Los Angeles three times on behalf of the Francis
> organization.  On the first trip in 1998, the green Cadillac loaded with
> cocaine was ready for them upon their arrival.  On the other trips,
> Watkins telephoned Muhammad, met with him, and then drove a car
> loaded with cocaine back to St. Louis.  Watkins and Hargrove were
> arrested in January 2000 on the return leg of their trip.  During the
> consensual search of Hargrove's vehicle, an officer discovered 11.47
> kilograms of cocaine in the electronically-controlled  secret
> compartment behind the rear seat.

Francis, 367 F.3d at 816.  Harold Watkins did not testify at trial.  The government

does not dispute that the memorandum was not turned over to the defense in time

for use at trial.  Francis argues that this memorandum constitutes Brady material

that should have been disclosed to the defense before or during trial because it allegedly contains exculpatory information and "proves" that: 1) Hargrove lied on the witness stand; and, 2) there was not a single conspiracy. Francis is wrong.

"The government has an obligation to disclose evidence that is favorable to the accused and material to either guilt or punishment, and this duty extends to impeachment evidence." United States v. Barraza Cazares, 465 F.3d 327, 333 (8th Cir. 2006) (citing United States v. Bagley, 473 U.S. 667, 676 (1985)). To prove a Brady violation, a "defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." Barraza Cazares, 465 F.3d at 333.

Here, the memorandum is not favorable to Francis or material to guilt under Brady. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability is a probability sufficient to undermine confidence in the outcome." United States v. Conroy, 424 F.3d 833, 837 (8th Cir. 2005) (internal quotation marks and citation omitted). The summary of Watkins' statement does not provide a basis for impeaching Hargrove, nor is it exculpatory, because Hargrove never claimed that either he or Watkins ever "conducted any drug transactions with the Francis brothers." Instead, Hargrove and Watkins were

part of the drug conspiracy through co-defendant Muhammad, and "one does not have to have contact with all of the other members of a conspiracy to be held accountable as a conspirator." United States v. Bascope-Zurita, 68 F.3d 1057, 1061 (8th Cir. 1995). Hargrove was cross-examined at length about his lack of contact with and knowledge of Francis, and Francis' lawyer argued to the jury that Hargrove "has no contact with Robert Francis . . . This person can't be believed, and he has no contact with Robert Francis. Let's see. Timothy Hargrove. From our standpoint, we say Mr. Hargrove disappears." The jury was never told, through evidence or argument, that the drug trips Hargrove and Watkins went on "were drug transactions with the Francis brothers." Yet "[t]he jury was instructed on single versus multiple conspiracies and found Robert Francis involved in the single conspiracy involved." Francis, 367 F.3d at 821 n.8. This is because the evidence of Francis' guilt and a single conspiracy involving, among others, Francis and Muhammad (and through Muhammad, Hargrove and Watkins) was overwhelming. As such, there is no reasonable probability that the disclosure of this memorandum "would have been sufficient to overcome the balance of the evidence and undermine confidence in the outcome." Barraza Cazares, 465 F.3d at 334. For these reasons, Ground 2 will be denied.

F.     *Ground 3 Fails Because The Challenged Testimony Was*
       *Properly Admitted*

In Ground 3, Francis argues that his due process rights were violated when

federal agents James Catalano, Harold Watson, and Kenneth Williams were

allowed to testify as to the meaning of certain code words and phrases that were

used in the wire tap conversations by Francis and his co-conspirators.  At trial, the

agents testified as to the drug world meaning of common words such as "girls,"

"China," and "boys."  Francis also challenges the testimony of police officer

Richard Koenemann, a police officer for the City of St. Louis who also testified

about common practices in the narcotics trafficking industry, including the use of

code words to evade detection.  Francis claims that this testimony improperly

invaded the province of the jury, was not helpful to the jury, and was actually

expert testimony that was improperly admitted into evidence as lay testimony.

Francis' arguments fail.

        "Law enforcement officers may testify as experts concerning the modus

operandi of drug dealers as such activities are not something with which most

jurors would be familiar."  United States v. Espino, 317 F.3d 788, 1164 (8th Cir.

2003).  Experts may also "help the jury with the meaning of jargon and code

words."  Id. at 1164-65.  As the Eighth Circuit has observed: "There is no more

reason to expect unassisted jurors to understand drug dealers' cryptic slang than antitrust theory or asbestosis." United States v. Delpit, 94 F.3d 1134, 1145 (8th Cir. 1996).

Here, the evidence was properly admitted to assist the jury in understanding the wiretap and other evidence of the drug conspiracy. The record demonstrates that the federal agents and Koenemann were more than qualified to offer their testimony as it was based on personal experience and training.[7] Francis argues that these witnesses were not experts because they were not disclosed in accordance with Rule 16 of the Federal Rules of Criminal Procedure, but he offers no evidence, other than his own speculation, to support this assertion.[8] Moreover, Francis can demonstrate no resulting prejudice from any alleged failure to disclose this relevant, admissible testimony because the witnesses were thoroughly cross-examined about their experience and their reasons for testifying that certain words were really drug code words and phrases. Finally, to obtain relief Francis would

---

[7]On direct appeal, the Eighth Circuit held that "Catalano was qualified to opine on the true nature of the wiretapped conversations, as he had five years of experience as a Special Agent with the Drug Enforcement Administration." Francis, 367 F.3d at 822 n.10.

[8]Francis also points to a statement I made in trial about not certifying witnesses as experts as proof that these witnesses are not considered experts. Francis misconstrues my statement, which I made to inform counsel that I would not announce to the jury that any witness was an "expert." As I stated, "The rules of evidence decide whether he is allowed to state his opinions . . . ." The rules of evidence permitted these witnesses to offer the testimony that the jury heard. It is not necessary for the Court to tell the jury that a witness is an expert, and in my opinion doing so has the potential for misleading or confusing the jury.

still be required to demonstrate a "significant possibility" that the admission of the testimony had a "significant impact on the jury." <u>See</u> <u>id.</u> Francis cannot make the required showing here because the jury could have easily inferred, from evidence other than the challenged testimony, that Francis was guilty. For these reasons, Ground 3 of Francis' § 2255 motion will be denied.

G.   *Ground 4 Fails Because Francis' Motion for Severance Was Properly Denied*

In his fourth ground for relief, Francis argues that I improperly denied his motion for severance because the defense presented by Willie Ellis was irreconcilable and antagonistic to his defense. Co-defendant Leo Muhammad raised this issue on direct appeal, although Francis did not. The Eighth Circuit rejected the argument:

> Muhammad alleges the trial court erred in denying his motion to sever his trial from that of the other defendants. We review the district court's refusal to sever for an abuse of discretion. <u>United States v. Frazier</u>, 280 F.3d at 844. "To succeed on appeal a defendant must show that he was clearly prejudiced by the joint trial." <u>Id.</u> (citing <u>United States v. Patterson</u>, 140 F.3d 767, 774 (8th Cir. 1998)). The federal system favors joint trials of defendants who are indicted together. <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993); <u>Frazier</u>, 280 F.3d at 844 ("We have said many times that it will be the rare case, if ever, where a district court should sever the trial of alleged coconspirators.").
>
> Rule 8 of the Federal Rules of Criminal Procedure allows the joint indictment of "2 or more defendants if they are alleged to have

participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Where joinder is proper under Rule 8, a trial court has the discretion under Rule 14 to order severance for separate trials where the defendant would be prejudiced by joinder. As the Supreme Court has advised: when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Zafiro, 506 U.S. at 539.

Muhammad argues that multiple conspiracies were improperly joined in a single conspiracy count in the indictment, and that this improper joinder permitted the jury to take into account the actions, criminal histories and hearsay statements of other persons who were in fact involved in separate and unrelated conspiracies. We disagree. The evidence introduced at trial sufficiently linked Muhammad to the conspiracy Robert Francis headed. Malarie Macon testified that Muhammad introduced her to the Francis brothers and assisted her with drug trips the Francis brothers coordinated. Wiretap evidence suggested that Muhammad helped Robert Francis coordinate the November 2000 drug trip. Muhammad's spill-over-effect argument is further weakened by the fact that the jury found three of his codefendants not guilty and were deadlocked as to another. This demonstrates that the jury was able to "sort [ ] out the evidence applicable to each defendant and render[ ] its verdict accordingly." United States v. Elder, 90 F.3d 1110, 1120 (6th Cir.1996). The district court did not abuse its discretion in denying Muhammad's motion to sever.

Francis, 367 F.3d at 830-31. Despite the Eighth Circuit's ruling, Francis argues

that his motion for severance should have been granted because his defense was

antagonistic to Willie Ellis' defense.

"Even the existence of generally antagonistic defenses does not necessitate a

severance." United States v. Darden, 70 F.3d 1507, 1527 (8th Cir. 1995). "To establish that conflicts between defenses caused prejudiced requiring reversal, an appellant at least must show that the defenses were irreconcilable." United States v. Jones, 880 F.2d 55, 63 (8th Cir. 1989). "The test is whether the defenses so conflict that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." Id. (internal quotation marks and citation omitted). Here, Willie Ellis presented the defense that, at most, he purchased drugs on one occasion from Francis, but that he was not proven to be part of the conspiracy count charged in the indictment. This defense was not antagonistic to Francis' defense, which was to attack the government's evidence of a conspiracy as speculative and to point out to the jury the lack of any physical evidence connecting Francis to any of the seized drugs. Ellis never conceded that the conspiracy was proven or that it existed. He simply argued that, if the charged conspiracy did exist, he was not part of it. This is not antagonistic to the core of Francis' defense that no conspiracy existed. Nor did Ellis' argument that he once purchased drugs from Francis make his defense antagonistic to Francis' defense. Because the defendants were on trial only for conspiracy, the jury could have found Francis not guilty of conspiracy even if they believed Ellis' theory of defense. Francis' motion to sever was properly denied. Because Francis and his co-

defendants were properly tried in one joint trial, Ground 4 of Francis' § 2255 motion fails.

H.    *Ground 5 Fails Because Macon's Testimony Was Properly Admitted*

In Ground 5, Francis contends that his Fifth Amendment due process rights were violated when Malarie Macon was permitted to testify about a statement made by Francis. Francis argues this statement was not made during the course and in furtherance of the conspiracy. At trial, Malarie Macon testified that she met with Robert Francis, Anthony Francis, and a bail bondsman after police searched her house. Macon stated that Robert Francis "shook his head yes" when asked during their conversation whether he would "get a lot of time" if the police talked to Macon. I overruled counsel's objections that this statement was hearsay and that it was made after the conspiracy ended. Ground 5 is rejected, as Francis' own statement was not hearsay and was properly admitted into evidence. See Fed. R. Evid. 801(d)(2)(A); Darden, 70 F.3d at 1528.[9]

_____

[9]Francis challenges the admissibility of his statement under Fed. R. Evid. 801(d)(2)(E), which provides that a statement is not hearsay if it is "made by a coconspirator of a party during the course and in furtherance of a conspiracy." Because there is ample evidence in the record that all of these elements were met, the statement is also admissible even if considered as a coconspirator's statement under Fed. R. Evid. 801(d)(2)(E).

## I.      *Ground 9 Fails Because the Prosecutor Did Not Present Perjured Testimony to the Grand Jury*

In his final ground for relief, Francis alleges that the prosecutor violated his due process rights because he refused to dismiss the indictment after "discovering that it was based on perjured testimony."  Ground 9 will be denied because Francis has no evidence that false testimony was presented to the Grand Jury.  At trial, United States Postal Inspector Dennis Simpson testified that he believed the identity of the co-conspirator known as "Bird Man" to be Travis Porter.  This is the same testimony Simpson gave to the Grand Jury.  Francis apparently believes that Simpson's testimony was false because during trial Timothy Hargrove testified that Bird Man resembled Tommy Macon.  Simpson was recalled to the stand for cross-examination about Bird Man's identity, and stated the reasons -- mainly, that Porter kept pigeons in a bird cage in his back yard -- for his identification of Travis Porter as Bird Man.  The information Simpson testified about was consistent with the information given to him by Hargrove during the course of the investigation. Because Travis Porter and Tommy Macon were described as similar in appearance, Macon's lawyer argued to the jury in closing that Hargrove's identification of Macon as Bird Man was a mistake:

> [T]he prosecutor got up and asked if he recognized anybody in the courtroom, and he pointed to my client and said, "That's Bird Man."

> That was clearly a misidentification. Now my client is African American male with a shaved head. We know who Bird Man is because Mr. Simpson told us Bird Man is Travis Porter. Do they look alike? I don't know . . . . [I]t was clear, not only from what happened at the misidentification, but from Mr. Simpson's testimony thereafter that Mr. Macon is not Bird Man.

When deciding to acquit Tommy Macon, the jury could have easily chosen to believe the testimony of Simpson, not Hargrove, about the identity of Bird Man. As the Eighth Circuit held on direct appeal, "issues of witness credibility are for a jury to decide . . . ." Francis, 367 F.3d at 820. There is nothing in this record to demonstrate that Simpson testified falsely, in the Grand Jury proceedings or elsewhere, about the identity of Bird Man. Francis' argument that he is entitled to habeas relief in Ground 9 of his § 2255 motion is meritless and will be denied.

### J. *I Will Not Issue a Certificate of Appealability*

As Francis has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997) (citing Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

For all the reasons stated above, Francis' §2255 motion will be denied.

**IT IS HEREBY ORDERED** that Robert Francis' motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [#1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Francis has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 28th day of July, 2010.